1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11  ARTHUR PETROSYAN,                    )   Case No.: 1:09-cv-00593 - AWI - JLT
                                         )
12              Plaintiff,               )   FINDINGS AND RECOMMENDATIONS
                                         )   GRANTING DEFENDANTS' MOTION TO
13       v.                              )   DISMISS WITHOUT PREJUDICE
                                         )
14  ALI, ZAMORA, GRANNIS, and YOUSSEF,   )
                                         )   (Doc. 52)
15              Defendants.              )
                                         )
16  _____  )

17          Defendants assert Arthur Petrosyan[1] failed to exhaust his administrative remedies, and seek

18  dismissal of the action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  (Doc. 52).

19  Plaintiff filed his opposition to the motion on August 2, 2013 (Doc. 71), to which Defendants replied on

20  August 14, 2013 (Doc. 72).  Oral arguments of the parties were heard on August 23, 2013.  For the

21  following reasons, the Court recommends that Defendants' motion be **GRANTED.**

22  **I.      FACTUAL AND PROCEDURAL HISTORY**

23          Plaintiff initiated this civil rights action by filing a complaint on April 2, 2009 (Doc. 1), which

24  he amended on June 15, 2009. (Doc. 10).  Plaintiff alleges that he injured his left hand on December 22,

25  2006, while incarcerated at Kern Valley State Prison ("KSVP").  (Doc. 10 at 4, ¶ 11.)  He informed the

26  medical staff of his injury and was given an ice pack, but no pain medication. Id.  Dr. Vasquez, a

27  _____

28       [1] When Plaintiff filed this action pro se, he spelled his name "Petosyan."  (Doc. 1)  In his amended complaint,
    Plaintiff spelled his name as "Petrosyan."  (Doc. 10) Counsel now refer to him as "Petrosyan."  Thus, the Court will refer
    to Plaintiff in this way as well.

physician at KVSP, submitted a request for services on December 26, 2006, requesting "'urgent consultant services of an Orthopedic hand Surgeon" and diagnosed Plaintiff with a <u>right</u> hand fracture. <u>Id</u>. at 4-5, ¶ 13.  In addition, Plaintiff alleges: "Dr. Vasquez wrote in the request that urgency is justified because 'compartment syndrome of finger may develop.'" <u>Id</u>.  X-rays of Plaintiff's hand were taken on December 27, 2006. <u>Id</u>. at 5, ¶14.

He asserts Dr. Paik, an orthopedic specialist, conducted an examination on January 8, 2007. (Doc. 1 at 5, ¶ 16.)  Dr. Paik took a second set of x-rays of Plaintiff's right hand and noted: "The x-rays in our office showed a linear fracture of the proximal phalanx of the finger and also a fracture of the fourth and fifth metacarpal head. There is volar radial displacement. There is also callus formation of the fracture site." <u>Id</u>.  In addition, Dr. Paik opined the facture was healing "with malposition." <u>Id</u>. (emphasis omitted).  Dr. Paik recommended Plaintiff "be scheduled for open reduction and internal fixation of the fifth metacarpal with K-wires." <u>Id.</u>, ¶ <u>17</u>.  Plaintiff's hand was placed in "a temporary 'short cast'" in anticipation of surgery. <u>Id</u>. at 8, ¶ 31.

According to Plaintiff, he submitted a health care request form on January 10, 2007, requesting he be seen by Dr. Vasquez because the cast caused additional pain. (Doc. 10 at 6, ¶ 18.)  He alleges there was no response to this request. <u>Id</u>., ¶ 19.  On January 16, 2007, a KSVP physician submitted a request that Dr. Paik be approved to perform the recommended surgery. <u>Id</u>. at 8, ¶ 29.  Plaintiff alleges KVSP failed to transport him for a follow-up appointment with Dr. Paik on January 29, 2007. <u>Id</u>. at 6, ¶ 22.

Plaintiff did not see another physician until February 2, 2007, when he was treated by Dr. Smeath.  (Doc. 10 at 6, ¶ 31.)  He alleges Dr. Smeath submitted a request for services "requesting 'ASAP please' an operation with 'K-wire, Rt. hand.'" (Doc. 10 at 6, ¶ 24).  In addition, on February 9, 2013, Dr. Vasquez submitted a request for an urgent follow-up, indicating the urgency was due to "loss of use." (Doc. 10 at 6-7, ¶ 25) (emphasis omitted).

On March 21, 2007, Plaintiff was seen by Dr. Marshall Lewis, who Plaintiff alleges is a general practitioner.[2]  (Doc. 10 at 7, ¶ 26.)  Dr. Lewis noted that Dr. Paik had thought surgery was needed but

---

[2] Despite this allegation, the Court takes judicial notice that Dr. Marshall Lewis is well-known area orthopedic surgeon.  Fed. R. Evid.201(b)(1), (2).

Dr. Lewis was not certain of this because he thought, "there may be a change of developing avascular necrosis of the fifth metacarpal head due to the nature of the fracture."  Id.  Dr. Lewis diagnosed "malunion of the fourth and fifth metacarpals," "[n]umbness in the fourth and fifth digits," "[p]athologic shortening of the fourth and fifth metacarpals," "[r]estriction of flexion and extension of the fourth and fifth digits," and "[p]ain from the metacarpophalangeal joints of the fourth and fifth digits" of the right hand.  Id.  Dr. Lewis ordered an MRI, EMG, and nerve conduction study be performed, and that Plaintiff return for evaluation after two weeks.  Id., ¶ 27.  Plaintiff alleges the tests were never performed, and he was not taken to Dr. Lewis for the follow-up appointment after two weeks.  Id., ¶ 28.

Plaintiff alleges that Defendant Youssef, KVSP Chief Medical Officer and Chairman of the KVSP Medical Authorization Review Committee, disapproved the surgery recommended by Dr. Paik.[3] (Doc. 10 at 8, ¶¶ 30-31.)  On August 30, 2007, Plaintiff filed an administrative appeal alleging "he did not receive adequate medical attention which resulted in my fracture to heal wrongly and needing correction by surgery. However, I have not been refered [sic] to a specialist to perform the necessary treatment." (Doc. 10 at 9, ¶ 34.)  As the "action requested," Plaintiff wrote: "I request to be referd (sic) to a specialist who can treat my injury . . ." Id.

At the first level of appeal, Defendant Ali responded "that because plaintiff had seen Dr. Paik in January and Dr. Lewis in March, the appeal was 'partially granted' and that plaintiff need[ed] no further treatment or any initial surgery requested." (Doc. 10 at 9-10, ¶35)  Similarly, on December 20, 2007, Defendant Zamora recited that on March 21, 2007, the orthopedic specialist Plaintiff was taken to see, disagreed that surgery was needed to correct his condition.  (Doc. 58 at 16)  Zamora noted also Plaintiff had undergone an MRI and a nerve conduction study which were recommended by the doctor at the March 21, 2007 visit.  Id.  Again, on August 15, 2007, Plaintiff was taken to see another orthopedic specialist who concurred that no surgery or follow-up was needed.  Id.  Zamora determined Plaintiff's appeal "was granted" though Plaintiff's continued request for surgery was not authorized.

_____

[3]On February 14, 2007, Plaintiff filed a grievance related to Dr. Paik's medical judgment and requested the CDCR investigate Dr. Paik's malpractice.  (Doc. 58 at 9)

(Doc. 58 at 16; Doc. 10 at 10, ¶ 37)  Plaintiff continued to request "that he be given surgery on his right hand because he [was]in constant, extreme pain." (Doc. 10 at 10, ¶ 37)

Plaintiff alleges that on March 6, 2008, Defendant Grannis, Chief of Inmate Appeals, determined there was "no unresolved issue to be reviewed at the Director's Level Review even though plaintiff clearly requested in his appeal that he be given surgery on his right hand . . ." (Doc. 10 at 10, ¶ 37)

On February 19, 2013, Defendants filed the motion to dismiss now pending before the Court. (Doc. 52.)  On June 23, 2013, the Honorable Anthony W. Ishii referred the motion to dismiss for resolution pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.  (Doc. 66).

## II.   EVIDENTIARY OBJECTIONS

Defendants support their motion to dismiss with the declarations of L.D. Zamora, L.D. Lozano, and K. Farquhar. (Docs. 52-1, 58, and 70).  Zamaora, Farquhar, and Lozano each assert in their respective declarations that Plaintiff has not had a decision rendered at the third level of review that pertains to his complaint. (Doc. 52-1 at 5 ¶ 12; Doc. 58; Doc. 70).  Plaintiff, meanwhile, argues that these declarations should be excluded as evidence because they are "replete with: (1) information in which the declarants lack personal knowledge; (2) hearsay; (3) improper lay opinions; (4) unduly prejudicial statements; and (5) evidence lacking authentication and/or foundation." (Doc. 71-4 at 3). Nowhere, however, does Plaintiff provide an explanation for the basis of his objections.

### A.   <u>Description of the Inmate Appeals Process and Regulations</u>

Plaintiff complains that Zamora's and Farquhar's general description of the inmate appeals process and regulations establishing the procedures are irrelevant. (Doc. 71-4 at 3-4; 8-9).  Given that the crux of Defendants' motion to dismiss is that Plaintiff failed to exhaust his administrative remedy, Plaintiff's objection is fundamentally flawed.   The description of the inmate appeals system, particularly the institutional system at KVSP, has a direct bearing on whether Plaintiff may proceed on his claim.   Thus, Plaintiff's evidentiary objections to Zamora's Declaration, paragraphs 3-6, and objections to Farquhar's Declaration, paragraphs 2 and 4 are **OVERRULED.**

### B.   <u>Summary of Plaintiff's Inmate Appellate History</u>

4

Plaintiff argues that Zamora's and Farquhar's description of Plaintiff's inmate grievance history and the databases used to track inmate appeals are irrelevant.  A review of their declarations, however, reveals otherwise.  First, Zamora, as the Chief of the Inmates Correspondence and Appeals Branch ("ICAB") of the California Correctional Heath Care Services, indicates that inmate appeals are recorded in a database known as the Health Care Appeals and Risk Tracking System ("HCARTS"). (Doc. 52-1 at 1, 3).  Similarly, Farquhar, as the Medical Appeals Coordinator at KVSP, indicates that timely submitted inmate appeals relating to medical issues at KVSP are logged into a Medical Appeal Tracking System ("MATS"). (Doc. 58 at 1-2).  Zamora and Farquhar then proceed to summarize Plaintiff's grievance history based on the information contained in the HCARTS and the MATS.  The information contained in their analysis has a direct bearing on whether Plaintiff exhausted his administrative remedies. Thus, Plaintiff's argument is meritless.

Next, Plaintiff argues that Zamora's and Farquhar's statements constitute hearsay. (Doc. 71-4 at 5-7, 9-15).  The regular practice of recording inmate grievances in either the HCART or the MATS clearly falls within the business records exception to the hearsay rule. Fed. R. Evid. 803(6).  As head of their respective departments, Zamora and Farquhar are logically qualified as witnesses to testify to the manner in which the records are kept and to summarize the information contained in those business records. *See* Fed. R. Evid. 803(6).

Plaintiff also contends that Zamora and Farquhar lack personal knowledge regarding Plaintiff's inmate grievance documents.  As Plaintiff fails to explain the basis for this objection, the Court presumes that Plaintiff believes Zamora and Farquhar lack personal knowledge because they did not draft the documents or physically enter data into the HCART or the MATS.  Nonetheless, the Court notes that Zamora and Farquhar merely summarized the information contained in the database and personal knowledge of the actual appeal is not required.

Similarly, Plaintiff's contention that Zamora and Farquhar failed to authenticate the documents contained in the HCARTS and the MATS databases pertaining to Plaintiff is without merit.  Zamora and Farquhar both describe in detail the manner in which the records are gathered and maintained. (Doc. 52-1 at 2; Doc. 58 at 2).  Next, they indicate the purpose for which they reviewed the documents, namely, to ascertain whether Plaintiff exhausted his administrative remedy. (Doc. 52-1 at

3; Doc. 58 at 1).  Finally, Zamora and Farquhar attach a "true and accurate copy" of the documents from the HCARTS and MATS databases. (Doc. 52-1 at 3; Doc. 58 at 3).  These documents appear to accurately reflect the Zamora's and Farquhar's summary of Plaintiff's grievances.  Thus, Zamora and Farquhar have adequately "produce[d] evidence sufficient to support a finding that the item is what the proponent claims it is," as required by Fed. R. Evid. 901.

Finally, Plaintiff argues that Zamora and Farquhar present improper testimony in analyzing whether Plaintiff properly exhausted his administrative remedies pursuant to Fed. R. Evid. 701, but fails to explain his objection. Fed. R. Evid. 701 limits a lay witnesses' opinion testimony to opinions which are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.  An opinion as to whether Plaintiff exhausted his administrative remedy requires an understanding of the grievance scheme outlined by the CCR as well as the purposes behind the PLRA.  Such opinions state legal conclusions. Thus, their opinions regarding whether Plaintiff has exhausted his administrative remedies is of no value to the Court. Accordingly, Plaintiff's evidentiary objections to Zamora's Declaration, paragraphs 5-12, and objections to Farquhar's Declaration, paragraphs 7-9 on this basis are **GRANTED.**

C. **Objections to Lozano's Declaration and Supplemental Declaration**

Lozano's declaration is substantially similar to Zamora's and Farquhar's declarations.  Lozano indicates that he is the Chief of the Office of Appeals for the CDCR, which receives all inmate appeals submitted to the third level of review. (Doc. 70 at 1). Lozano then describes the process by which all non-medical appeals were handled prior to August of 2008, but explains that all medical appeals are now handled through the ICAB. Id. at 3.  He further indicates that he is personally familiar with the record keeping system at Office of Appeals, and can verify whether medical appeals were filed at the third level prior to August of 2008. Id.  Based upon Plaintiff's documents attached to his declaration, Lozano concludes that Plaintiff's Institution Log No. KVSP-O-07-02123 was screened out by the Office of Appeals. Id. at 4.

Like his objections to Zamora and Farquhar's declarations, Plaintiff objects to the Lozano's declarations on the grounds of relevance, lack of personal knowledge, improper opinion testimony,

1  hearsay, and lack of authentication. (Doc. 71-4 at 12-19).  Notably, Plaintiff again fails to explain the

2  rationale behind his objections and has failed to identify which of Lozano's statements he believes

3  constitute opinion testimony.   Thus, the objection on this basis is **OVERRULED**.   Moreover,

4  Plaintiff's objections to Lozano's declaration and supplemental declaration are **OVERRULED** on the

5  same grounds as they were for Zamora's and Farquhar's declarations.

6  **III.    DISCUSSION AND ANALYSIS**

7      **A.    Exhaustion under the PLRA**

8       The Prison Litigation Reform Act places constraints on inmates' ability to sue. Toward this

9  end, inmates must exhaust the prison's administrative remedies before they can file an action. See 42

10  U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is

11  mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Indeed, the

12  PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of

13  this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

14  facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

15  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

16  involve general circumstances or particular episodes, and whether they allege excessive force or some

17  other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

18       Exhaustion serves two purposes. Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it gives

19  prison officials the opportunity to address its mistakes before it is sued which furthers respect for

20  prison procedures.   Second, exhaustion promotes efficiency because claims can be resolved more

21  quickly and economically in the administrative process than in litigation. Id.

22       The exhaustion requirement of § 1997e(a) does not impose a pleading requirement, but rather is

23  an affirmative defense, under which defendants have the burden of raising and proving the plaintiff

24  failed to exhaust the available administrative remedies prior to filing a complaint in the District Court.

25  Bock, 549 U.S. at 216.   The proper pretrial motion for raising the defense of exhaustion is an

26  unenumerated Fed.R.Civ.P 12(b) motion because exhaustion is a matter of abatement that does not go

27  to the merits of the claims.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l

28  Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium).  To

1  determine whether a case should be dismissed for failure to exhaust administrative remedies, "the court

2  may look beyond the pleadings and decide disputed issues of fact" in a procedure that is "closely

3  analogous to summary judgment." Id. at 1119-20.  When the court concludes the prisoner has not

4  exhausted all of his available administrative remedies, "the proper remedy is dismissal without

5  prejudice." Id.

6      **B.     The CDCR's grievance system**

7          The California Department of Corrections and Rehabilitation established an administrative

8  system for prisoner's grievances. See Cal. Code Regs., tit. 15 § 3084, et seq.   To exhaust the

9  administrative remedies, a prisoner must comply with the deadlines and other applicable procedural

10 rules. Woodford v. Ngo, 548 U.S. 81, 93 (2006).  Prisoners may appeal "any departmental decision,

11 action, condition, or policy which they can reasonable demonstrate as having an adverse effect upon

12 their welfare."  Cal. Code Regs., tit. 15 at § 3084.1(a).

13         Prior to January 28, 2011, the administrative system required three levels of review of the

14 inmate's complaints. Id. at § 3084.7(a)-(c).[4]  Specifically, an inmate must first attempt to resolve his

15 complaint at the first, informal level. § 3084.7(a).  Second, as to any grievance which is "denied or not

16 otherwise resolved to the appellant's satisfaction at the first level" the inmate must appeal to the

17 second level. § 3084.7(b). Finally, "[t]he third level is for review of appeals not resolved at the second

18 level." § 3084.7(c). The third level review is reserved also for an inmate who "appeals a third level

19 cancellation decision or action."  § 3084.7(c)(1). Notably, under §3084.6(c)(11), an appeal may be

20 canceled or screened out at the third level where an issue has been resolved at a prior level.  When this

21 occurs, as noted above, the inmate must appeal the cancellation directly to the third level Appeals

22 Chief. Cal. Code Reg., tit. 15, §§ 3084.6(e). A screened or canceled appeal does not exhaust an

23 administrative remedy. Cal. Code Reg., tit. 15, § 3084.1(b).

24         According to the Ninth Circuit, an inmate exhausts his administrative remedies when no

25 pertinent relief remains available to him through the prison appeal process. Brown v. Valoff, 422 F.3d

26 926, 936-937 (9th Cir. 2005) ("A defendant must demonstrate that pertinent relief remained available,

27

28         [4] Given that Plaintiff initiated this matter on April 2, 2009, § 3084.5 is applicable to the analysis of whether
Plaintiff exhausted his administrative remedies.

1   whether at unexhausted levels of the grievance process or through awaiting the results of the relief

2   already granted as a result of that process.")  Thus, the Ninth Circuit does not require an inmate to

3   utilize all administrative appeals levels where doing so would be futile. <u>Marella v. Terhune</u>, 568 F.3d

4   1024, 1027 (9th Cir. 2009) (An inmate's failure to exhaust his administrative remedies beyond the

5   second level of the appeal system was not dispositive to his exhaustion requirement where prison

6   personnel informed the inmate that no further pertinent relief was available to him.)

7   **C.      Plaintiff failed to appeal the cancellation of his third level appeal**

8            As a preliminary matter, the parties agree that Plaintiff submitted an appeal in Institutional Log

9   No. KVSP-O-07-02123 ("Log No. 02123") to the third level. (Doc. 71 at 5; 72 at 2-3).[5]  In Log No.

10  02123, Plaintiff complained that his medical providers failed to treat his broken hand and requested

11  that prison personnel refer him to a specialist. (Doc. 58 at 12).  The parties dispute whether the action

12  taken at the third level constitutes a "final decision" for exhaustion purposes. (Doc. 71 at 5; 72 at 2-3).

13           Citing to Cal. Dep't of Corrections Operations Manual, § 54100.11 ("Levels of Review),

14  Defendants argue that an inmate exhausts his or her administrative review process "only after the

15  inmate receives "a decision from the Director." (Doc 52 at 7; Doc. 52-1 at 2).[6]  Defendants aver that

16  Plaintiff's Log No. 02123 did not constitute a decision because it was "screened-out and returned to

17  Petrosyan, with no actual decision being issued." (Doc. 72 at 3).  In particular, Farquhar explained that

18  appeals which are properly submitted will be logged into the IATS system, but those which are

19  screened out will be returned to the inmate. (Doc. 58 at 2, ¶ 5).  Here, Defendants assert there is no

20  indication in IATS that Plaintiff appealed Log No. 02123 to the third level. (Doc. 70 at 4 ¶ 8(b)).

21  Defendants conclude that there was pertinent relief available to Plaintiff following the cancellation

22

23  ――――――――――――――――――

24      [5] Defendants discuss at length the other inmate appeals filed by Plaintiff, as it appears Plaintiff filed a significant
    number of inmate grievances pertaining to his hand and other various medical issues.  However, Plaintiff presents Log No.
25  02123 as the only inmate grievance on which he relies to demonstrate that he exhausted his administrative remedy. (Doc.
    71).  Therefore, the Court need not address the remaining inmate grievances because they are extraneous to the present
    matter.
26      [6] Defendants fail to indicate to which edition of the CDCR's Operations Manual they refer.  However, the Court
    presumes that Defendants refer to the edition which was operative at the time Plaintiff filed his administrative complaint.
27  <u>See</u> <u>Holt v. Stockman</u>, Case No. CV1046073-PHX-MHM, 2009 WL 3126502, at *2 (E.D. Cal. Sept. 24, 2009) (The
    director's decision "shall be final and exhausts all administrative remedies available in the Department [of Corrections].
28  California Department of Corrections Operations Manual § 54100**.**11**."** (citations and quotations in original)).   Such a
    definition, however, fails to define a "final decision."

1    because "it was possible for Petrosyan to [continue appealing the screen-out of his third level appeal]

2    until he received an actual third level decision." (Doc. 72 at 6).

3        Plaintiff fails to rebut Defendants' explanation for the absence in IATS of a determination of

4    Log No. 02123 at the third level.[7]  Plaintiff indicates he received a response to Log No. 02123 from

5    the Director's Level in March of 2008. (Doc. 71-1 at 2).  According to Plaintiff, Defendant Grannis

6    "denied" Plaintiff's third level appeal because prison personnel granted his request at the second level.

7    Id.  This current assertion is contrary to that pleaded in the first amended complaint which Plaintiff

8    signed under penalty of perjury.  In his first amended complaint, Plaintiff does not claim his appeal

9    was "denied." (Doc. 10 at 10 ¶ 37.) Instead, he attested that, "On March 6, 2008, defendant N.

10   Grannis, Chief of Inmate Appeals, found, "**There is no unresolved issue to be reviewed** at the

11   Director's Level Review" even though plaintiff clearly requested in his appeal that he be given surgery

12   on his right hand because he is in constant, extreme pain, not only in his awake hours, but the pain

13   seeps into his sleep, causing nightmares."[8] Id., emphasis added.

14       Contrary to Plaintiff's explanation that his appeal was "denied," the language used that "There

15   is no unresolved issue to be reviewed" mirrors the grounds upon which appeals may be "screened-out"

16   or "cancelled."[9] See Cal. Code Reg., tit. 15, §3084.6(c)(11)("An appeal may be cancelled for any of

17   the following reasons . . . The issue under appeal has been resolved at a previous level.").  Notably,

18   section 3084.6(e) specifically instructs that "the application of the rules provided in subsection

19   3084.6(c) to the cancelled appeal **may be separately appealed. If an appeal is cancelled at the third**

20   **level of review, any appeal of the third level cancellation decision shall be made directly to the**

21

22   ───────────────
     [7] Plaintiff submits the Declaration of inmate St. Clair in support of his opposition to the motion to dismiss. (Doc.
23   71-2). The Court has reviewed the document, but finds the declaration only partially admissible. It states legal conclusions
     without a sufficient foundational showing.  Moreover, his opinion as to the legal effect of Plaintiff's actions within the
24   grievance system—that, indeed, they exhausted the administrative remedies—is not helpful to the Court. F.R.E. 701. Thus,
     the objection as to St. Clair's opinions is **GRANTED**.  However, the objection related to St. Clair expressing his
25   experience with the grievance procedures are within his personal knowledge and the actions he took in preparing Plaintiff's
     complaints is **OVERRULED.**
26       [8] Notably, Mr. St. Clair, who drafted Plaintiff's pleading, attests that he "took the information from Plaintiff's
     administrative appeal, Institutions Log. No. KVSP-0-07-02123, to write paragraphs 34 through 37, inclusive, of the
27   Amended Complaint."
         [9] That Plaintiff did not know about the further appeal process for challenging a screened-out appeal is of no
28   moment. See Bryant v. Rich, 530 F.3d 1368, 1373 n. 6 (11th Cir. 2008). ("We have said that an administrative remedy is
     not 'available' if it is unknown and unknowable to the inmate.")

**third level Appeals Chief**." Emphasis added.

Plaintiff does not claim he appealed the March 2008 cancellation despite that he was plainly dissatisfied with the refusal to conduct the third level Review and despite that it failed to provide him the relief he sought.  (Doc. 10 at 10 ¶ 37)  On the other hand, Plaintiff was allowed also to resubmit his cancelled third level appeal (Doc. 70 at 2-3) but he does not claim he did so to point out to prison officials that he had not received the relief he sought—the surgery.

The PLRA makes clear that a determination whether exhaustion has occurred is dictated, not by the PLRA, but by the procedures set forth by the prison. 42 U.S.C. § 1997(e)(a).  Thus, until the procedures set forth by the internal grievance system set forth by the CDCR are satisfied, the inmate has not exhausted the administrative remedies.[10]  Though Plaintiff now argues there was no further relief available to him, this is contradicted by his verified complaint in which he notes his objection to the third level cancellation because he continued to be frustrated in obtaining the desired surgery.  The fact that prison officials had not indicated an inclination to authorize the surgery up to that point, does not excuse the appeal of the cancellation.

To the contrary, when considering whether an inmate must exhaust the administrative procedures even though the relief he sought *could not be granted by prison officials*, in <u>Booth</u>, the Supreme Court held that "exhaustion" under the PLRA refers to the available procedures that the inmate must follow to complete the grievance process; it does not refer to the relief sought.  The Court noted, "one 'exhausts' processes, not forms of relief, and the statute provides that one must."  <u>Booth</u>, 532 U.S. at 739.  Moreover, the Court continued, "statutory history, confirms the suggestion that Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."  <u>Id</u>.

---

[10]  Nevertheless, in this circuit, the Court has held that an inmate is excused from compliance with the exhaustion requirement if an appeal is improperly screened out. <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 823 (9th Cir. 2010).  However, the <u>Sapp</u> Court did not consider whether the inmate had appealed the screening determination and did not mention the provisions of the CCR which set forth the procedures for appealing this type of determination. 15 CCR 3084.7(c)(1) and § 3084.6(e).  Thus, <u>Sapp</u> does not appear to control here.  In any event, the Court does not find evidence that prison officials screened out the third level appeal for improper reasons.  Indeed, the evidence presented is that, after the grievance was first presented, prison officials ensured that Plaintiff was taken to at least two other specialists who did not believe that surgery was needed.  This does not appear to be a situation where prison officials were playing cheap tricks to satisfy the grievance but to avoid the substantive relief sought.

1    Here, it is undisputed that Plaintiff reported *on the face of his grievanc*e, that he had not

2 received the proper medical treatment and needed surgery to correct how the hand had healed.  (Doc.

3 58 at 12)  Likewise, it is clear that Plaintiff described the relief sought as, "I request to be referd [sic]

4 to a specialist who can treat my injury." Id.   Put together, it is apparent that Plaintiff felt that surgery

5 was needed and he wanted to receive it.  Id.  Despite this, at the first level the appeal was "partially

6 granted" because Plaintiff had received the explicit relief he sought—referral to a specialist—given he

7 was seen by specialists Drs. Paik and Lewis.  Id. at 10 ¶ 35.

8    Similarly, the second level review was granted for the same reason.  Doc. 58 at 16-17.  Though

9 Plaintiff asserts that he provided a 4-page explanation indicating he never received the surgery Dr.

10 Paik had recommended, the request for the surgery was not addressed.  Thus, the second level decision

11 rests upon the provision of the specialist visits recited above and another August 2007 consultation

12 with a specialist who recommended against surgery and against further follow-up. (Doc. 58 at 17)  At

13 the third level, again, the grievance was not, apparently, considered in totality but, instead, only the

14 explicit relief sought was considered.  Because Plaintiff, indisputably, had seen a specialist, Grannis

15 noted that all relief sought in the original grievance had been provided and cancelled the appeal.

16    Nevertheless, Plaintiff failed to appeal this cancellation and, seemingly, argues that *any*

17 response at the third level constitutes exhaustion.  In making this argument, he ignores the explicit

18 instruction that a cancellation *does not* exhaust for purposes of the PLRA.  15 CCR §§ 3084.7(c)(1)

19 and § 3084.6(e).  In this same vein, this Court has held that,

20    If staff grants only some of the relief requested in the inmate's appeal, or **if the inmate
21    believes that he or she is entitled to any other form of relief or otherwise finds the
     resolution unacceptable for any reason, the inmate must continue the exhaustion
22    process** to the third level of review. [Citation] Therefore, an inmate seeking judicial
     relief in excess of administrative relief granted at any level must present his or her
23    claim to the third level and this relief remains unexhausted until the examiner **renders
     a decisions [sic] at the third level**. [Citation]

24 Tubach v. Lahimore, 1:10-CV-913 AWI SMS, 2012 WL 4490792 (E.D. Cal. Sept. 28, 2012),

25 emphasis added.  Hence, if a Plaintiff is not satisfied with the outcome of an appeal, he *must* continue

26 to appeal.  Here, Plaintiff was dissatisfied with the outcome of the appeals and continued through the

27 process to the third level.  Where he failed, however, was in not appealing the cancellation of his third

28 level appeal.

12

Plaintiff asserts he did not know that he could appeal the cancellation of his third level appeal in, seemingly, arguing that administrative remedies were unavailable.  However, this would excuse the further appeal only if prison officials actively mislead Plaintiff or the information about the next step to be taken was not knowable to Plaintiff.  *See* <u>Nunez v. Duncan</u>, 591 F .3d 1217, 1224 (9th Cir.2010). Thus, because the Court concludes Plaintiff did not exhaust his administrative remedies, the Court **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** and the matter **DISMISSED without prejudice**.

**FINDINGS AND RECOMMENDATIONS**

Accordingly, for the reasons set forth above, **IT IS HEREBY RECOMMENDED** that**:**

1.  Plaintiff's evidentiary objections (Doc. 71-4) be **OVERRULED in part and GRANTED in part;**

2.  Defendants' evidentiary objections (Doc. 73) be **OVERRULED in part and GRANTED in part;** and

3.  Defendants' Motion to Dismiss (Doc. 52) be **GRANTED** and the matter be **DISMISSED without prejudice.**

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).  Within **14 days** after being served with these findings and recommendations, the parties may file written objections with the Court.  Any document containing written objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order**.  *See* <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **August 28, 2013**                          **/s/ Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE