1

2

3

4

5

6

7

8               **UNITED STATES DISTRICT COURT**

9               **EASTERN DISTRICT OF CALIFORNIA**

10

11   ARTHUR PETROSYAN,                    )   Case No.: 1:09-cv-00593 - AWI - JLT
                                          )
12                    Plaintiff,          )   AMENDED FINDINGS AND
                                          )   RECOMMENDATIONS DENYING
13          v.                            )   DEFENDANTS' MOTION TO DISMISS
                                          )   WITHOUT PREJUDICE
14   ALI, ZAMORA, GRANNIS, and YOUSSEF,   )   (Doc. 52)
                                          )
15                    Defendants.         )
     _____  )

16

17          Defendants assert Arthur Petrosyan[1] failed to exhaust his administrative remedies, and seek

18   dismissal of the action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  (Doc. 52).

19   Plaintiff filed his opposition to the motion on August 2, 2013 (Doc. 71), to which Defendants replied on

20   August 14, 2013 (Doc. 72).  Oral arguments of the parties were heard on August 23, 2013.  For the

21   following reasons, the Court recommends that Defendants' motion be **DENIED.**

22   **I.      FACTUAL AND PROCEDURAL HISTORY**

23          Plaintiff initiated this civil rights action by filing a complaint on April 2, 2009 (Doc. 1), which

24   he amended on June 15, 2009. (Doc. 10).  Plaintiff alleges that he injured his <u>left</u> hand on December 22,

25   2006, while incarcerated at Kern Valley State Prison ("KSVP").  (Doc. 10 at 4, ¶ 11.)  He informed the

26

27   _____

28          [1] When Plaintiff filed this action pro se, he spelled his name "Petosyan."  (Doc. 1)  In his amended complaint,
     Plaintiff spelled his name as "Petrosyan."  (Doc. 10) Counsel now refer to him as "Petrosyan."  Thus, the Court will refer
     to Plaintiff in this way as well.

1   medical staff of his injury and was given an ice pack, but no pain medication. Id.  Dr. Vasquez, a

2   physician at KVSP, submitted a request for services on December 26, 2006, requesting "'urgent

3   consultant services of an Orthopedic hand Surgeon" and diagnosed Plaintiff with a right hand fracture.

4   Id. at 4-5, ¶ 13.  In addition, Plaintiff alleges: "Dr. Vasquez wrote in the request that urgency is justified

5   because 'compartment syndrome of finger may develop.'"  Id.  X-rays of Plaintiff's hand were taken on

6   December 27, 2006.  Id. at 5, ¶14.

7       He asserts Dr. Paik, an orthopedic specialist, conducted an examination on January 8, 2007.

8   (Doc. 1 at 5, ¶ 16.)  Dr. Paik took a second set of x-rays of Plaintiff's right hand and noted: "The x-rays

9   in our office showed a linear fracture of the proximal phalanx of the finger and also a fracture of the

10  fourth and fifth metacarpal head. There is volar radial displacement. There is also callus formation of

11  the fracture site."  Id.  In addition, Dr. Paik opined the facture was healing "with malposition." Id.

12  (emphasis omitted).  Dr. Paik recommended Plaintiff "be scheduled for open reduction and internal

13  fixation of the fifth metacarpal with K-wires."  Id., ¶ 17.  Plaintiff's hand was placed in "a temporary

14  'short cast'" in anticipation of surgery.  Id. at 8, ¶ 31.

15      According to Plaintiff, he submitted a health care request form on January 10, 2007, requesting

16  he be seen by Dr. Vasquez because the cast caused additional pain. (Doc. 10 at 6, ¶ 18.)  He alleges

17  there was no response to this request. Id., ¶ 19.  On January 16, 2007, a KSVP physician submitted a

18  request that Dr. Paik be approved to perform the recommended surgery.  Id. at 8, ¶ 29.  Plaintiff alleges

19  KVSP failed to transport him for a follow-up appointment with Dr. Paik on January 29, 2007. Id. at 6, ¶

20  22.

21      Plaintiff did not see another physician until February 2, 2007, when he was treated by Dr.

22  Smeath.  (Doc. 10 at 6, ¶ 31.)  He alleges Dr. Smeath submitted a request for services "requesting

23  'ASAP please' an operation with 'K-wire, Rt. hand.'"  (Doc. 10 at 6, ¶ 24).  In addition, on February 9,

24  2013, Dr. Vasquez submitted a request for an urgent follow-up, indicating the urgency was due to "loss

25  of use."  (Doc. 10 at 6-7, ¶ 25) (emphasis omitted).

26      On March 21, 2007, Plaintiff was seen by Dr. Marshall Lewis, who Plaintiff alleges is a general

27

28

practitioner.[2]  (Doc. 10 at 7, ¶ 26.)  Dr. Lewis noted that Dr. Paik had thought surgery was needed but Dr. Lewis was not certain of this because he thought, "there may be a change of developing avascular necrosis of the fifth metacarpal head due to the nature of the fracture."  Id.  Dr. Lewis diagnosed "malunion of the fourth and fifth metacarpals," "[n]umbness in the fourth and fifth digits," "[p]athologic shortening of the fourth and fifth metacarpals," "[r]estriction of flexion and extension of the fourth and fifth digits," and "[p]ain from the metacarpophalangeal joints of the fourth and fifth digits" of the right hand.  Id.  Dr. Lewis ordered an MRI, EMG, and nerve conduction study be performed, and that Plaintiff return for evaluation after two weeks.  Id., ¶ 27.  Plaintiff alleges the tests were never performed, and he was not taken to Dr. Lewis for the follow-up appointment after two weeks.  Id., ¶ 28.

Plaintiff alleges that Defendant Youssef, KVSP Chief Medical Officer and Chairman of the KVSP Medical Authorization Review Committee, disapproved the surgery recommended by Dr. Paik.[3] (Doc. 10 at 8, ¶¶ 30-31.)  On August 30, 2007, Plaintiff filed an administrative appeal alleging "he did not receive adequate medical attention which resulted in my fracture to heal wrongly and needing correction by surgery. However, I have not been refered [sic] to a specialist to perform the necessary treatment."  (Doc. 10 at 9, ¶ 34.)  As the "action requested," Plaintiff wrote: "I request to be referd (sic) to a specialist who can treat my injury . . ." Id.

At the first level of appeal, Defendant Ali responded "that because plaintiff had seen Dr. Paik in January and Dr. Lewis in March, the appeal was 'partially granted' and that plaintiff need[ed] no further treatment or any initial surgery requested." (Doc. 10 at 9-10, ¶35)  Similarly, on December 20, 2007, Defendant Zamora recited that on March 21, 2007, the orthopedic specialist Plaintiff was taken to see, disagreed that surgery was needed to correct his condition.  (Doc. 58 at 16)  Zamora noted also Plaintiff had undergone an MRI and a nerve conduction study which were recommended by the doctor at the March 21, 2007 visit.  Id.  Again, on August 15, 2007, Plaintiff was taken to see another orthopedic specialist who concurred that no surgery or follow-up was needed.  Id.  Zamora determined

---

[2] Despite this allegation, the Court takes judicial notice that Dr. Marshall Lewis is well-known orthopedic surgeon in this area.  Fed. R. Evid.201(b)(1), (2).

[3] On February 14, 2007, Plaintiff filed a grievance related to Dr. Paik's medical judgment and requested the CDCR investigate Dr. Paik's malpractice.  (Doc. 58 at 9)

Plaintiff's appeal "was granted" though Plaintiff's continued request for surgery was not authorized. (Doc. 58 at 16; Doc. 10 at 10, ¶ 37)  Plaintiff continued to request "that he be given surgery on his right hand because he [was]in constant, extreme pain." (Doc. 10 at 10, ¶ 37)

Plaintiff alleges that on March 6, 2008, Defendant Grannis, Chief of Inmate Appeals, determined there was "no unresolved issue to be reviewed at the Director's Level Review even though plaintiff clearly requested in his appeal that he be given surgery on his right hand . . ." (Doc. 10 at 10, ¶ 37)

On February 19, 2013, Defendants filed the motion to dismiss now pending before the Court. (Doc. 52.)  On June 23, 2013, the Honorable Anthony W. Ishii referred the motion to dismiss for resolution pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.  (Doc. 66.)

## II.     EVIDENTIARY OBJECTIONS

Defendants support their motion to dismiss with the declarations of L.D. Zamora, L.D. Lozano, and K. Farquhar. (Docs. 52-1, 58, and 70).  Zamaora, Farquhar, and Lozano each assert in their respective declarations that Plaintiff has not had a decision rendered at the third level of review that pertains to his complaint. (Doc. 52-1 at 5 ¶ 12; Doc. 58; Doc. 70).  Plaintiff, meanwhile, argues that these declarations should be excluded as evidence because they are "replete with: (1) information in which the declarants lack personal knowledge; (2) hearsay; (3) improper lay opinions; (4) unduly prejudicial statements; and (5) evidence lacking authentication and/or foundation." (Doc. 71-4 at 3). Nowhere, however, does Plaintiff provide an explanation for the basis of his objections.

### A.  Description of the Inmate Appeals Process and Regulations

Plaintiff complains that Zamora's and Farquhar's general description of the inmate appeals process and regulations establishing the procedures are irrelevant. (Doc. 71-4 at 3-4; 8-9).  Given that the crux of Defendants' motion to dismiss is that Plaintiff failed to exhaust his administrative remedy, Plaintiff's objection is fundamentally flawed.  The description of the inmate appeals system, particularly the institutional system at KVSP, has a direct bearing on whether Plaintiff may proceed on his claim.  Thus, Plaintiff's evidentiary objections to Zamora's Declaration, paragraphs 3-6, and objections to Farquhar's Declaration, paragraphs 2 and 4 are **OVERRULED.**

///

4

B.  **Summary of Plaintiff's Inmate Appellate History**

Plaintiff argues that Zamora's and Farquhar's description of Plaintiff's inmate grievance history and the databases used to track inmate appeals are irrelevant.  A review of their declarations, however, reveals otherwise.  First, Zamora, as the Chief of the Inmates Correspondence and Appeals Branch ("ICAB") of the California Correctional Heath Care Services, indicates that inmate appeals are recorded in a database known as the Health Care Appeals and Risk Tracking System ("HCARTS"). (Doc. 52-1 at 1, 3).  Similarly, Farquhar, as the Medical Appeals Coordinator at KVSP, indicates that timely submitted inmate appeals relating to medical issues at KVSP are logged into a Medical Appeal Tracking System ("MATS"). (Doc. 58 at 1-2).  Zamora and Farquhar then proceed to summarize Plaintiff's grievance history based on the information contained in the HCARTS and the MATS.  The information contained in their analysis has a direct bearing on whether Plaintiff exhausted his administrative remedies. Thus, Plaintiff's argument is meritless.

Next, Plaintiff argues that Zamora's and Farquhar's statements constitute hearsay. (Doc. 71-4 at 5-7, 9-15).  The regular practice of recording inmate grievances in either the HCART or the MATS clearly falls within the business records exception to the hearsay rule. Fed. R. Evid. 803(6).  As head of their respective departments, Zamora and Farquhar are logically qualified as witnesses to testify to the manner in which the records are kept and to summarize the information contained in those business records. *See* Fed. R. Evid. 803(6).

Plaintiff also contends that Zamora and Farquhar lack personal knowledge regarding Plaintiff's inmate grievance documents.  As Plaintiff fails to explain the basis for this objection, the Court presumes that Plaintiff believes Zamora and Farquhar lack personal knowledge because they did not draft the documents or physically enter data into the HCART or the MATS.  Nonetheless, the Court notes that Zamora and Farquhar merely summarized the information contained in the database and personal knowledge of the actual appeal is not required.

Similarly, Plaintiff's contention that Zamora and Farquhar failed to authenticate the documents contained in the HCARTS and the MATS databases pertaining to Plaintiff is without merit.  Zamora and Farquhar both describe in detail the manner in which the records are gathered and maintained. (Doc. 52-1 at 2; Doc. 58 at 2).  Next, they indicate the purpose for which they reviewed the

documents, namely, to ascertain whether Plaintiff exhausted his administrative remedy. (Doc. 52-1 at 3; Doc. 58 at 1).  Finally, Zamora and Farquhar attach a "true and accurate copy" of the documents from the HCARTS and MATS databases. (Doc. 52-1 at 3; Doc. 58 at 3).  These documents appear to accurately reflect the Zamora's and Farquhar's summary of Plaintiff's grievances.  Thus, Zamora and Farquhar have adequately "produce[d] evidence sufficient to support a finding that the item is what the proponent claims it is," as required by Fed. R. Evid. 901.

Finally, Plaintiff argues that Zamora and Farquhar present improper testimony in analyzing whether Plaintiff properly exhausted his administrative remedies pursuant to Fed. R. Evid. 701, but fails to explain his objection. Fed. R. Evid. 701 limits a lay witnesses' opinion testimony to opinions which are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701.   An opinion as to whether Plaintiff exhausted his administrative remedy requires an understanding of the grievance scheme outlined by the CCR as well as the purposes behind the PLRA.   Such opinions state legal conclusions. Thus, their opinions regarding whether Plaintiff has exhausted his administrative remedies is of no value to the Court.  Accordingly, Plaintiff's evidentiary objections to Zamora's Declaration, paragraphs 5-12, and objections to Farquhar's Declaration, paragraphs 7-9 on this basis are **GRANTED.**

### C. Objections to Lozano's Declaration and Supplemental Declaration

Lozano's declaration is substantially similar to Zamora's and Farquhar's declarations.  Lozano indicates that he is the Chief of the Office of Appeals for the CDCR, which receives all inmate appeals submitted to the third level of review. (Doc. 70 at 1). Lozano then describes the process by which all non-medical appeals were handled prior to August of 2008, but explains that all medical appeals are now handled through the ICAB. Id. at 3.  He further indicates that he is personally familiar with the record keeping system at Office of Appeals, and can verify whether medical appeals were filed at the third level prior to August of 2008. Id.  Based upon Plaintiff's documents attached to his declaration, Lozano concludes that Plaintiff's Institution Log No. KVSP-O-07-02123 was screened out by the Office of Appeals. Id. at 4.

Like his objections to Zamora and Farquhar's declarations, Plaintiff objects to the Lozano's

6

declarations on the grounds of relevance, lack of personal knowledge, improper opinion testimony, hearsay, and lack of authentication. (Doc. 71-4 at 12-19).  Notably, Plaintiff again fails to explain the rationale behind his objections and has failed to identify which of Lozano's statements he believes constitute opinion testimony.   Thus, the objection on this basis is **OVERRULED**.   Moreover, Plaintiff's objections to Lozano's declaration and supplemental declaration are **OVERRULED** on the same grounds as they were for Zamora's and Farquhar's declarations.

## III.    DISCUSSION AND ANALYSIS

### A.        Exhaustion under the PLRA

The Prison Litigation Reform Act places constraints on inmates' ability to sue. Toward this end, inmates must exhaust the prison's administrative remedies before they can file an action. See 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Indeed, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Exhaustion serves two purposes. Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it gives prison officials the opportunity to address its mistakes before it is sued which furthers respect for prison procedures.   Second, exhaustion promotes efficiency because claims can be resolved more quickly and economically in the administrative process than in litigation. Id.

The exhaustion requirement of § 1997e(a) does not impose a pleading requirement, but rather is an affirmative defense, under which defendants have the burden of raising and proving the plaintiff failed to exhaust the available administrative remedies prior to filing a complaint in the District Court. *Bock*, 549 U.S. at 216.   The proper pretrial motion for raising the defense of exhaustion is an unenumerated Fed.R.Civ.P 12(b) motion because exhaustion is a matter of abatement that does not go to the merits of the claims.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003); Ritza v. Int'l

7

Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium).   To determine whether a case should be dismissed for failure to exhaust administrative remedies, "the court may look beyond the pleadings and decide disputed issues of fact" in a procedure that is "closely analogous to summary judgment."   Id. at 1119-20.   When the court concludes the prisoner has not exhausted all of his available administrative remedies, "the proper remedy is dismissal without prejudice."   Id.

**B.      The CDCR's grievance system**

The California Department of Corrections and Rehabilitation established an administrative system for prisoner's grievances. *See* Cal. Code Regs., tit. 15 § 3084, *et seq*.   To exhaust the administrative remedies, a prisoner must comply with the deadlines and other applicable procedural rules.   Woodford v. Ngo, 548 U.S. 81, 93 (2006).   Prisoners may appeal "any departmental decision, action, condition, or policy which they can reasonable demonstrate as having an adverse effect upon their welfare."   Cal. Code Regs., tit. 15 at § 3084.1(a)(2006 and 2008).

Prior to January 28, 2011, the administrative system required four levels of review of the inmate's complaints. Cal. Code Regs., tit. 15 at § 3084.1.[4]   Specifically, an inmate was required to: "(1) [seek an] informal resolution; (2) [file a] formal written appeal on a CDC 602 inmate appeal form; (3) [file a] Second Level appeal to the institution's head or designee; and (4) [file a] Third Level appeal to the Director of the California Department of Corrections." Puckett v. N. Kern State Prison Employees, CIV108CV01243BRMPOR, 2010 WL 1796722 (E.D. Cal. May 3, 2010) (*citing* prior Cal. Code Regs., tit. 15 at § 3084.5); Avina v. Bailey, Case No. CIV S-08-0020-LKK-CMK-P, 2009 WL 1532107 (E.D. Cal. June 1, 2009); Anderson v. Martel, CIV S-07-1651-FCD-CMK-P, 2008 WL 1805790 (E.D. Cal. Apr. 21, 2008) report and recommendation adopted, CIVS071651FCDCMK-P, 2008 WL 2261285 (E.D. Cal. June 2, 2008).

According to the Ninth Circuit, an inmate exhausts his administrative remedies when no pertinent relief remains available to him through the prison appeal process. Brown v. Valoff, 422 F.3d 926, 936-937 (9th Cir. 2005) ("A defendant must demonstrate that pertinent relief remained available,

---

[4] Given that Plaintiff initiated this matter on April 2, 2009, the provisions cited in this paragraph were effective during the time Plaintiff filed his administrative grievances. *See e.g.,* Puckett v. N. Kern State Prison Employees, Case No. 1:08-CV-01243-BRM-POR, 2010 WL 1796722 (E.D. Cal. May 3, 2010).

whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process.")  Thus, the Ninth Circuit does not require an inmate to utilize all administrative appeals levels where doing so would be futile.  Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (An inmate's failure to exhaust his administrative remedies beyond the second level of the appeal system was not dispositive to his exhaustion requirement where prison personnel informed the inmate that no further pertinent relief was available to him.)

### C.      Defendants fail to carry their burden of proof.

As a preliminary matter, the parties agree that Plaintiff submitted an appeal in Institutional Log No. KVSP-O-07-02123 ("Log No. 02123") to the third level. (Doc. 71 at 5; 72 at 2-3).[5]  In Log No. 02123, Plaintiff complained that his medical providers failed to treat his broken hand and requested that prison personnel refer him to a specialist. (Doc. 58 at 12).  The parties dispute whether the action taken at the third level constitutes a "final decision" for exhaustion purposes. (Doc. 71 at 5; 72 at 2-3).

Citing to Cal. Dep't of Corrections Operations Manual, § 54100.11 ("Levels of Review), Defendants argue that an inmate exhausts his or her administrative review process "only after the inmate receives "a decision from the Director." (Doc 52 at 7; Doc. 52-1 at 2).  Defendants aver that Plaintiff's Log No. 02123 did not constitute a decision because it was "screened-out and returned to Petrosyan, with no actual decision being issued." (Doc. 72 at 3).  In particular, Farquhar explained that appeals which are properly submitted will be logged into the IATS system, but those which are screened out will be returned to the inmate. (Doc. 58 at 2, ¶ 5).  Defendants assert there is no indication in IATS that Plaintiff appealed Log No. 02123 to the third level. (Doc. 70 at 4 ¶ 8(b)).  Defendants conclude that there was pertinent relief available to Plaintiff following the cancellation because "it was possible for Petrosyan to [continue appealing the screen-out of his third level appeal] until he received an actual third level decision." (Doc. 72 at 6).  Defendants assert that "it was the Office of Appeals' best practice in 2008 to state in the screen out letter that institution staff were

---

[5] Defendants discuss at length the other inmate appeals filed by Plaintiff, as it appears Plaintiff filed a significant number of inmate grievances pertaining to his hand and other various medical issues.  However, Plaintiff presents Log No. 02123 as the only inmate grievance on which he relies to demonstrate that he exhausted his administrative remedy. (Doc. 71).  Therefore, the Court need not address the remaining inmate grievances because they are extraneous to the present matter.

1   available to assist the inmate in obtaining forms and documents required to submit an appeal" of the

2   screen out determination (Id.) but, unfortunately, they have offered no evidence this occurred in

3   Plaintiff's case.[6]

4       Plaintiff counters Defendants' explanation for the absence in IATS of a determination of Log

5   No. 02123 at the third level by indicating that he received a response to Log No. 02123 from the

6   Director's Level in March of 2008. (Doc. 71-1 at 2).[7]   According to Plaintiff, Defendant Grannis

7   "denied" Plaintiff's third level appeal because prison personnel granted his request at the second level.

8   Id.   This current assertion is contrary to that pleaded in the first amended complaint which Plaintiff

9   signed under penalty of perjury.   In his first amended complaint, Plaintiff does not claim his appeal

10  was "denied." (Doc. 10 at 10 ¶ 37.) Instead, he attested that, "On March 6, 2008, defendant N.

11  Grannis, Chief of Inmate Appeals, found, "**There is no unresolved issue to be reviewed** at the

12  Director's Level Review" even though plaintiff clearly requested in his appeal that he be given surgery

13  on his right hand because he is in constant, extreme pain, not only in his awake hours, but the pain

14  seeps into his sleep, causing nightmares."[8] Id., emphasis added.

15      The PLRA makes clear that a determination whether exhaustion has occurred is dictated not by

16  the PLRA, but by the procedures set forth by the prison. 42 U.S.C. § 1997(e)(a).   Thus, until the

17  procedures set forth by the internal grievance system set forth by the CDCR are satisfied, the inmate

18  has not exhausted the administrative remedies.[9]   Furthermore, when considering whether an inmate

19  must exhaust the administrative procedures even though the relief he sought *could not be granted by*

20

21      [6] The Court is aware that in the past, there has been "boilerplate" language at the bottom of the screen-out
    notification letter informing the inmate of his appeal rights.  Thus, the Court is perplexed why there is no evidence
22  presented that this was the case when Plaintiff's screen-out letter was provided to him.  *See* Sapp, 623 F.3d at 826; Barrett,
    at *9.

23      [7] Plaintiff submits the Declaration of inmate St. Clair in support of his opposition to the motion to dismiss. (Doc.
    71-2). The Court has reviewed the document, but finds the declaration only partially admissible. It states legal conclusions
24  without a sufficient foundational showing.  Moreover, his opinion as to the legal effect of Plaintiff's actions within the
    grievance system—that, indeed, they exhausted the administrative remedies—is not helpful to the Court. F.R.E. 701. Thus,
25  the objection as to St. Clair's opinions is **GRANTED**.   However, the objection related to St. Clair expressing his
    experience with the grievance procedures are within his personal knowledge and the actions he took in preparing Plaintiff's
26  complaints is **OVERRULED.**

27      [8] Notably, Mr. St. Clair, who drafted Plaintiff's pleading, attests that he "took the information from Plaintiff's
    administrative appeal, Institutions Log. No. KVSP-0-07-02123, to write paragraphs 34 through 37, inclusive, of the
    Amended Complaint."

28      [9] Nevertheless, in this circuit, the Court has held that an inmate is excused from compliance with the exhaustion
    requirement if an appeal is improperly screened out. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010).

*prison officials*, in <u>Booth</u>, the Supreme Court held that "exhaustion" under the PLRA refers to the available procedures that the inmate must follow to complete the grievance process; it does not refer to the relief sought.  The Court noted, "one 'exhausts' processes, not forms of relief, and the statute provides that one must."  <u>Booth</u>, 532 U.S. at 739.  Moreover, the Court continued, "statutory history, confirms the suggestion that Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."  <u>Id</u>.

When ordered to "address the argument that the California regulations in March 2008 did not require Plaintiff to appeal a cancellation or "screen-out" decision made *at the Director's Level* and specifically cite—and attach copies of—the regulations in place at that time which required the appeal, if any," Defendants failed to expressly do so. (Docs. 81 at 2; 82).  Rather, Defendants essentially reargued their original motion by submitting:

> "According to the regulations in operation in 2008, "[a]ny inmate or parolee under the department's jurisdiction may appeal any departmental decision, *action*, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2006) (2008) (emphasis added); *Barrett v. Cate*, 2011 U.S. Dist. LEXIS 148052 at *25 (E.D. Cal. Dec. 23, 2011) ("[t]hough the Ninth Circuit has not held explicitly that an inmate must challenge an improper screening determination, the Court has suggested as much"); *see also*, *Jackson v. Felker*, 2009 U.S. Dist. LEXIS 90585 (E.D. Cal. Sept. 28, 2009) (motion to dismiss granted where "Plaintiff did not modify his appeal and refile it, nor did he appeal the screen out decision"); *Newman v. McLean*, 2009 WL 688859 at *6 N.D.Cal. 2009) ("[p]laintiff did not pursue all the remedies that were available since he could have appealed the alleged improper screening out of the inmate appeal as being duplicative but failed to do so"). The regulations at the time also provided that "[a]n appellant must submit the appeal within 15 working days of the event or decision being appealed, or of receiving an unacceptable lower level appeal decision." Cal. Code Regs. tit. 15, § 3084.6(c) (2006) (2008). Petrosyan was thus able to appeal the screen-out of his third level appeal, but failed to do so."

(Doc. 82 at 3).  Without doubt this is a correct statement of the law.  However, none of the cases cited addressed the situation here where there was a Second Level grant of the grievance and a Third Level screen-out.  Thus, there is simply no way for the Court to conclude Plaintiff was aware—or could have informed himself—that he *could* appeal a Third Level screen out.  Notably, even now, Defendants don't explain to whom the appeal of the Third Level screen-out would have been submitted; if they don't know, the Court is at a loss as to how Plaintiff should have known.

A review of the statutory authority provided by the Defendant demonstrates that the Defendants failed to meet their burden of providing that Plaintiff failed to exhaust his administrative remedy.  First unlike the current version of § 3084.1, which expressly provides that "a cancellation or rejection decision does not exhaust administrative remedies," the 2006 and 2008 versions of § 3084.1 are silent on the issue. *Compare* Cal. Code Regs. tit. 15, § 3084.1 (2006) (2008) *with* § 3084.1 (2013). Similarly, no cited provisions in the 2006 or 2008 Cal. Code. Regs. required the Plaintiff to appeal a cancellation or screen-out at the third level, as is currently required by § 3084.6(e).  The Court cannot require the Plaintiff to prove that he followed certain procedures which were not in effect at the time he filed his administrative grievance absent an express statutory mandate.

Moreover, the cases cited by Defendants are silent as to the determinative issue of whether Plaintiff was *required* to appeal a cancellation at the Director's Level.  First, Barrett v. Cate, Case No. 1:09-CV-01741 LJO, 2011 WL 6753993 (E.D. Cal. Dec. 23, 2011), the Court considered that Ninth Circuit precedence may require an inmate to appeal a cancellation of his appeal made at the lower levels level noting that the plaintiff *could* have returned to the appeals coordinator for reconsideration, but there is no mention of the Director's Level in the opinion.  Also, in Barrett, the inmate was specifically instructed on the screen-out letter of his right to appeal.  Here, Plaintiff contends no such instruction was given.  Similarly, Jackson v. Felker, Case No. 2:07-CV-00954-KJDPAL, 2009 WL 3164893 (E.D. Cal. Sept. 29, 2009), involved an inmate whose claim was apparently screened-out after a first or second level review.  Finally, like the two prior cases, Newman v. McLean, Case No. C 05-01724 JW (PR), 2009 WL 688859 (N.D. Cal. Mar. 13, 2009), involved an inmate who failed to appeal the cancellation of his appeal at the first or second level.

Here, Defendants do not deny Plaintiff presented a claim to the Director's Level.  Rather, they request the Court to determine that a screen-out at the Third Level did not constitute a decision for exhaustion purposes.  As the Court's previous findings and recommendations make clear, had this event occurred under the current regulations, it would have no hesitation finding that the remedies were not exhausted.  It is important, however, that the current statutory scheme specifically instructs inmates that they must appeal a screen-out decision in order to exhaust their remedies.  If there was evidence that Plaintiff was instructed similarly back in 2008—that he must appeal the screen-out

determination—the Court would likely be swayed.  However, lacking this evidence, the Court cannot find Defendants met their burden of proving Plaintiff did not exhaust his available remedies.  Thus, the Court **RECOMMENDS** that Defendant's motion to dismiss be **DENIED.**

### FINDINGS AND RECOMMENDATIONS

Accordingly, for the reasons set forth above, **IT IS HEREBY RECOMMENDED** that**:**

1. Plaintiff's evidentiary objections (Doc. 71-4) be **OVERRULED in part and GRANTED in part;**

2. Defendants' evidentiary objections (Doc. 73) be **OVERRULED in part and GRANTED in part;** and

3. Defendants' Motion to Dismiss (Doc. 52) be **DENIED without prejudice.**

These findings and recommendations are submitted to the United States District Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).  Within **14 days** after being served with these findings and recommendations, the parties may file written objections with the Court.  Any document containing written objections should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  **The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order**.  *See* Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:   __**September 30, 2013**__          _____**/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE